UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| )  | |
| Plaintiff, ) | |
| v.   ) | Case No. 10-CR-20003 |
| ) | |
| TERRION D. HERMAN, ) | |
| ) | |
| Defendant. ) | |

## OPINION

This case is before the court for ruling on the Motion to Reopen Suppression Proceedings (#74) filed by Defendant, Terrion D. Herman. This court has carefully considered the arguments raised in Defendant's Motion (#74), the Government's Response (#75) and Defendant's Reply (#77). Following this careful review, Defendant's Motion to Reopen Suppression Proceedings (#74) is GRANTED.

BACKGROUND

On February 9, 2010, the grand jury returned a one-count indictment (#7) against Defendant. Defendant was charged with, on or about February 3, 2010, knowingly possessing 50 grams or more of a mixture and substance containing cocaine base ("crack"), a Schedule II controlled substance, with the intent to distribute it. Defendant was represented by retained counsel, Ray E. Richards, II, of Royal Oak, Michigan.

On July 9, 2010, Defendant filed a Motion to Suppress Evidence (#19) and a Motion to Suppress Statement (#20). Defendant's Motions incorporated a Brief in Support. In his Motion to Suppress Evidence (#19), Defendant argued that the search of the property at 1200 S. Vine Street, Apartment #25, Urbana, Illinois, violated his constitutional rights because the

search warrant lacked particularity and was issued without probable cause. In his Motion to Suppress Statement (#20), Defendant argued that statements he made during the search should be suppressed. On July 28, 2010, the Government filed a Response to Defendant's Motion to Suppress Evidence (#21) and a Response to Defendant's Motion to Suppress Statements (#22).

An evidentiary hearing was held on August 19, 2010. At the hearing, the Government presented the testimony of three witnesses, Investigator Jay Loschen, Sergeant Sylvia Morgan and Investigator Michael Cervantes of the Urbana Police Department. Defendant did not present any evidence. This court found the testimony of the Government's witnesses to be credible.

The evidence presented showed that, on February 3, 2010, Loschen spoke with an individual who was arrested during a "parolee roundup." This individual said that Defendant had been selling crack cocaine as recently as January 31, 2010, from an apartment next to the Urbana Middle School. Loschen verified through multiple sources that Defendant resided at 1200 S. Vine Street, Apartment 25, in Urbana, which was located directly across the street from Urbana Middle School. Loschen also determined that Defendant was currently on parole and had four prior drug convictions.

That same day, Loschen took his trained narcotics detection canine, Hunter, outside the third floor door which had "25 " on it. Loschen testified that he has been a trained K9 officer since March 2002 and his required monthly training with Hunter was up to date on February 3, 2010. Loschen stated that Hunter had been with the Urbana Police Department

since October 1, 2008, and had previously assisted law enforcement agencies in the recovery of illegal drugs. Loschen testified that Hunter alerted to the presence of narcotics within the apartment. Loschen then sought and obtained a state court search warrant for Defendant's apartment located at 1200 S. Vine Street, Apartment #25, Urbana.

The Government provided the court with a copy of the search warrant and the complaint and affidavit for search warrant. The complaint was signed under oath by Loschen. Loschen stated that he received information that "a black male known as TERRION HERMAN was selling crack cocaine as recently as January 31, 2010 from an apartment adjacent to The Urbana Middle School located at 1201 S. Vine Street, Urbana, Illinois, Champaign County." Loschen stated that he confirmed, from several sources, that Defendant was on parole and resided at 1200 S. Vine Street, Apartment #25, in Urbana. Loschen stated that he checked Defendant's criminal history and learned that he had 8 charges and 4 convictions for dangerous drugs. Loschen stated that he and "Inv. Michael Cervantes and Sgt. Sylvia Morgan conducted a drug investigation at 1200 S. Vine Street, Urbana, Champaign County, Illinois by conducting a canine sniff (K9 Sweep) at the door located on the third floor and that door displayed the number '25', on it." Loschen stated that he ran his canine partner Hunter along that door and "Hunter alerted to the odor of illegal drugs within the residence by sitting."

The search warrant issued based upon Loschen's complaint authorized the search of "1200 S. VINE STREET APARTMENT #25, URBANA, CHAMPAIGN COUNTY, ILLINOIS, A RED BRICK BUILDING WITH GRAY SIDING, APARTMENT ON THIRD

3

FLOOR WITH #25 ON DOOR." The search warrant was executed the day it was issued, February 3, 2010. Defendant was the only individual present inside the apartment. Based upon his observations of Defendant while seated on the couch, Investigator Matthew Quinley asked Morgan to search a clock hanging above the kitchen entrance door. Inside the back of the clock, Morgan found approximately 95 grams of cocaine base ("crack") in a plastic bag.

After Morgan found the crack cocaine, Loschen advised Defendant of his Miranda rights. Defendant stated he understood his rights and agreed to speak with officers. Defendant made numerous admissions, including admitting that he possessed the crack cocaine found in the clock, that he was involved in selling narcotics, and that one of the items seized by the officers from his apartment was a digital scale. Each of the items seized by the officers, including the crack cocaine, digital scale, plastic bags, cellular telephone and $134 United States currency was specifically listed as items to be seized in the search warrant.

Following the evidentiary hearing, the parties filed written argument with the court. On November 23, 2010, this court entered an Opinion (#29) which denied the Motion to Suppress Evidence and Motion to Suppress Statements. This court agreed with the Government that: (1) the search warrant was supported by probable cause based upon the information received and the alert by the canine; (2) even if Defendant could show that the warrant was not supported by probable cause, the *Leon* good faith exception applies; and (3) the search warrant sufficiently described the location to be searched and the items to be seized. This court stated that it agreed with the Government that the use of a canine to sniff

the exterior of the apartment was not a search implicating the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005) (use of a well-trained narcotics-detection dog "generally does not implicate legitimate privacy interests"). This court further agreed that a positive dog indication for narcotics provides sufficient probable cause for the issuance of a search warrant. *See Caballes*, 543 U.S. at 406-07. This court noted that it agreed with the Government that Defendant's one sentence argument that the "K-9 hit is not a finding of fact but indicia of the possible presence of drugs that once again cannot be cross examined but only affirmed by the testimony of the K-9 handler" made little sense. This court therefore concluded that there was no reason to address it.[1] This court also concluded that Defendant did not present any facts or argument which would warrant suppressing the statements Defendant made after he was advised of his *Miranda* rights.

The case proceeded to a jury trial on July 13, 2011. At trial, Loschen testified that Defendant's apartment building was a "secured building." Morgan testified that it was a "three-story apartment building with secure entrance doors." She stated that the entrance doors were locked and "[y]ou have to get buzzed into the, the entrance doors." Morgan testified that, when the officers executed the search warrant, they "waited in the parking lot until we saw a resident come home" and then she "went in behind them and held the door for the other officers." Defendant was found guilty by the jury. On January 23, 2012, this court

---

[1] This court now notes that it was concerned regarding whether the case law cited actually supported a conclusion that a dog sniff at the door of a residence was proper under the Fourth Amendment. However, the argument was not raised and did not need to be considered at that time.

5

sentenced Defendant to a term of life imprisonment.

Defendant appealed and the Seventh Circuit appointed counsel to represent him on appeal. Defendant's attorney raised only one issue, that the case should be remanded for resentencing under the Fair Sentencing Act in light of *Dorsey v. United States*, 132 S. Ct. 2321 (2012). In his Brief, filed on November 26, 2012, Defendant's counsel included a section regarding Defendant's belief that there were multiple constitutional violations in the proceedings. In this section, Defendant's counsel discussed the motion to suppress and the dog sniff. Based upon this discussion, it appears that Defendant's appellate counsel did not raise the issue of the dog sniff because trial counsel made an insufficient record in this court.

After the Brief was filed, the parties filed a Joint Motion to Remand in light of Dorsey. The Seventh Circuit granted the Joint Motion on December 10, 2012. On January 2, 2013, the Mandate (#72) was filed in this court. The Seventh Circuit's Mandate stated that Defendant's sentence was vacated "and the case is **REMANDED** to the district court for resentencing in accordance with *Dorsey v. United States*, 132 S. Ct. 2321 (2012), and the Fair Sentencing Act." Following remand, Defendant's appellate counsel was allowed to withdraw and the Federal Public Defender for the Central District of Illinois was appointed to represent Defendant.

On March 26, 2013, the United States Supreme Court decided *Florida v. Jardines*, 133 S. Ct. 1409 (2013). In *Jardines*, the Court considered the following issue: "whether using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a 'search' within the meaning of the Fourth Amendment." In discussing this issue, the

6

Court stated:

> But when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat to his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961). This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.
>
> We therefore regard the area "immediately surrounding and associated with the home"—what our cases call the curtilage—as "part of the home itself for Fourth Amendment purposes." *Oliver* [*v. United States*, 466 U.S. 170, 180 (1984)]. That principle has ancient and durable roots. Just as the distinction between the home and the open fields is "as old as the common law," *Hester* [*v. United States*, 265 U.S. 57, 59 (1924)], so too is the identity of home and what Blackstone called the "curtilage or homestall," for the "house protects and

> privileges all its branches and appurtenants." 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769). This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened." *California v. Ciraola*, 476 U.S. 207, 213, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986).
>
> While the boundaries of the curtilage are generally "clearly marked," the "conception defining the curtilage" is at any rate familiar enough that it is "easily understood from our daily experience." *Oliver*, 466 U.S. at 182, n.12, 104 S. Ct. 1735. Here there is no doubt that the officers entered it: The front porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends." *Ibid.*

*Jardines*, 133 S. Ct. at 1414-15.

The Court then concluded that the officers' use of a trained police dog to explore the area around the home in hopes of discovering incriminating evidence was a search within the meaning of the Fourth Amendment. *Jardines*, 133 S. Ct. at 1416-18. The Court noted that "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Jardines*, 133 S. Ct. at 1416, *quoting Kentucky v. King*, 563 U.S. ___, ___, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011). The Court noted that "the background social norms that invite a visitor to the front

door do not invite him there to conduct a search." *Jardines*, 133 S. Ct. at 1416. The Court therefore affirmed the ruling of the Supreme Court of Florida which had affirmed the trial court's decision to suppress marijuana plants found in a home. *Jardines*, 133 S. Ct. at 1417-18. The plants were found during the execution of a search warrant which was obtained after a trained police dog sniffed the base of the front door of a home and alerted for the presence of narcotics. *Jardines*, 133 S. Ct. at 1413.

On May 23, 2013, Defendant filed his Motion to Reopen Suppression Proceedings (#74) based on *Jardines*.

ANALYSIS

In his Motion to Reopen, Defendant argued that, because this case has been remanded and is not yet final, *Jardines* should be applied in this case. Defendant noted that the United States Supreme Court has stated that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to *all cases*, state or federal, pending on direct review or *not yet final*, with no exception for cases in which the new rule constitutes a "clear break" with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Defendant pointed out that in *United States v. Martin*, the Seventh Circuit remanded the case in light of an intervening Supreme Court decision, even though the defendant in *Martin* did not raise below the issue decided by the Supreme Court in *United States v. Jones*, 132 S. Ct. 945 (2012), whether the attachment of a GPS device to a vehicle is a search. *United States v. Martin*, 712 F.3d 1080, 1081 (7th Cir. 2013). Defendant argued that this court denied Defendant's suppression motion because the dog sniff established probable cause to obtain the search warrant.

9

Defendant argued that, in doing so, this court concluded that the dog sniff was not a search for Fourth Amendment purposes, a finding which cannot be squared with the Supreme Court's decision in *Jardines*.

Defendant argued that the facts adduced at trial showed that Defendant's apartment building had a secured entrance. He stated:

> In other words, Mr. Herman's apartment door was not accessible to the general public. And so, it was even more sheltered than the front porch in *Jardines*; the public did not even have a license to knock on Mr. Herman's front door. And there was certainly not a license to "introduc[e] a trained police dog to explore the area around the [apartment door] in hopes of discovering incriminating evidence." *Jardines*, 133 S. Ct. at 1416.
>
> The importance of this issue cannot be understated. Because of the unlawful search, officers were able to obtain a warrant to search Mr. Herman's apartment, and that search uncovered crack cocaine. That crack cocaine in turn led to Mr. Herman's conviction at trial, and he now faces the potential of an extremely long sentence (the advisory Guidelines range is 30 years to life). Before this Court imposes a significant sentence, it should first ensure that the underlying conviction was not

> based on a Constitutional violation. And if it is, as Mr. Herman can demonstrate, the conviction should not stand, nor should a sentence be imposed.

Defendant argued that "[c]learly, in these circumstances, it would work a manifest injustice if this Court did not reopen the suppression proceedings in light of the Supreme Court's decision in *Jardines*."

The Government filed its Response (#75) on June 11, 2013. The Government argued that Defendant's Motion should be denied because: reopening the suppression proceedings is outside the scope of the Seventh Circuit's remand order for resentencing; this new Fourth Amendment challenge was waived by Defendant during the initial district court proceeding and on appeal; even if this court has discretion, the circumstances do not warrant such an extraordinary remedy; and Defendant's ineffective assistance of counsel claims are without merit. The Government argued that *Jardines* is distinguishable from the facts of this case and, even if *Jardines* holding that a canine sniff on the front porch of a home is a "search" applied to the facts of this case, it does not necessarily follow that the search was unreasonable. The Government contended that the search warrant application contained other information sufficient to establish probable cause. The Government also argued that, even if probable cause was lacking without the canine sniff, suppression would not be warranted because of the officers' good faith reliance on the search warrant under *United States v. Leon*, 468 U.S. 897 (1984). The Government also argued that Defendant's counsel was not ineffective for failing to anticipate the Supreme Court's decision in *Jardines*.

Defendant was allowed to file a Reply (#77), which was filed on June 28, 2013. Defendant clarified that he was not raising the issue of ineffective assistance of counsel. Defendant also argued that the mandate rule does not prohibit this court from reopening the suppression proceedings, noting that one of the cases cited by the Government, *United States v. Buckley*, 251 F.3d 668, 669-70 (7th Cir. 2001), actually recognizes the point that "extraordinary circumstances" permit district courts to consider issues outside the scope of remand. Defendant argued that this case presents such "extraordinary circumstances" because this court denied the suppression motion after determining that the dog sniff was not a search for Fourth Amendment purposes, a finding called into serious question by the decision in *Jardines*. Defendant also pointed out that the Government's Response was silent regarding Defendant's citation of *Griffith*. Defendant argued that, under *Griffith*, "*Jardines* applies to this case because this case is not yet final" and "because *Jardines* is an intervening Supreme Court decision, this Court should reopen the suppression proceedings so Mr. Herman may seek appropriate relief." Defendant also argued that any waiver of the issue should be excused as it was in *Martin*. Defendant also countered the Government's arguments regarding the applicability of the *Jardines* decision. Defendant argued that the search warrant application, which did not include any information regarding the source of the information regarding Defendant's drug dealing, did not contain sufficient information to establish probable cause for the issuance of a search warrant without the canine sniff. Defendant also argued that, without the canine sniff, the officers could not have relied in good faith on the search warrant.

This court has carefully considered the arguments presented by the parties and the case law cited. Following this careful consideration, this court concludes that the suppression proceedings should be reopened based upon the decision of the Supreme Court in *Jardines*. This court concludes that this case does present extraordinary circumstances which warrant the consideration of an issue outside the scope of the remand and which warrant excusing Defendant's waiver of the issue.

This court is particularly persuaded by the Seventh Circuit's decision in *Martin*. In *Martin*, the defendant appealed the district court's denial of his motion to suppress the firearm and drugs found in his car. The Seventh Circuit affirmed, after concluding that the police did not violate the defendant's rights under the Fifth Amendment, the only question he presented in the appeal. *United States v. Martin*, 664 F.3d 684 (7th Cir. 2011). While the defendant's timely petition for rehearing with suggestion for rehearing en banc was pending before the Seventh Circuit, the Supreme Court decided *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945 (2012) and held that the installation of a GPS device to track the vehicle's location constitutes a search within the meaning of the Fourth Amendment. *Martin*, 712 F.3d at 1081. Following *Jones*, the defendant added arguments based on the warrantless GPS in his case to his other arguments for suppression. *Martin*, 712 F.3d at 1081. The Seventh Circuit then ordered a limited remand for the district court to consider whether the defendant's plea agreement allowed him to challenge the evidence against him under *Jones* and whether *Jones* justified the suppression of the evidence against him. *Martin*, 712 F.3d at 1081.

This court concludes that, just as the district court in *Martin* considered the validity of the warrantless GPS in light of *Jones,* this court should consider the validity of the dog sniff in this case in light of *Jardines*. This court agrees with Defendant that *Martin* is good authority for the proposition that, if this case had still been in the Seventh Circuit when *Jardines* was decided, the case would have been remanded to this court to consider *Jardines*. This case was open when the Supreme Court decided *Jardines* and this court concludes that *Jardines* is directly applicable to the facts of this case. A decision of the Supreme Court construing the Fourth Amendment "is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *Griffith*, 479 U.S. at 324, *quoting United States v. Johnson*, 457 U.S. 537, 562 (1982).

Accordingly, this court concludes that Defendant's Motion to Reopen Suppression Proceedings (#74) must be granted. Defendant will be allowed to file a Motion to Suppress based upon *Jardines*. An evidentiary hearing and briefing schedule will then be set.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Reopen Suppression Proceedings (#74) is GRANTED.

(2) This case remains scheduled for a status conference on August 9, 2013, at 9:00 a.m. The Motion to Withdraw (#79) filed by Defendant's attorneys will be taken up at that time. Defendant will be allowed time to file a Motion to Suppress based upon *Jardines* when the representation issues are resolved.

(3) Because sentencing will not proceed pending this court's ruling on the Motion to Suppress, Defendant's Motion to Continue Due Date for the Filing of Objections to the

Remand Memorandum (#79) is MOOT.

ENTERED this 7th day of August, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE